UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVELERS INDEMNITY COMPANY,<br><br>                                    Plaintiff,<br><br>-against-<br><br>AXIS INSURANCE COMPANY,<br><br>                                    Defendant. | Case No. 1:23-cv-01442 (JLR)<br><br>**OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

  Travelers Indemnity Company ("Travelers") brings this action against AXIS Insurance Company ("Axis") under the Declaratory Judgment Act, 28 U.S.C. § 2201 (the "DJA"). ECF No. 1 (the "Complaint" or "Compl."). Axis has moved to dismiss the Complaint for lack of standing under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and for failure to state a claim under Rule 12(b)(6). ECF No. 24 ("Br."). The Court denies the motion under Rule 12(b)(1) but grants the motion under Rule 12(b)(6).

### BACKGROUND[1]

**I. The Underlying Action**

  Travelers, Axis, and Starr Indemnity & Liability Company ("Starr") collectively issued four insurance policies relevant here. First, Travelers issued a policy to L&K Partners, Inc. ("L&K") for the period of December 19, 2018, to December 19, 2019. Compl. ¶ 16. Second, Travelers issued a policy to United States Information Systems, Inc. ("Systems") and

---

[1] In addition to the Complaint – which contains factual allegations that the Court assumes to be true, *see N.Y. Life Ins. Co. v. United States*, 724 F.3d 256, 261 (2d Cir. 2013) – the Court considers documents "incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint," *id.* at 258 n.1 (citation omitted). The Court also takes judicial notice of "document[s] filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *LaFleur v. Whitman*, 300 F.3d 256, 267 n.1 (2d Cir. 2002) (citation omitted).

USIS Electric, Inc. ("Electric" and, together with Systems, "USIS") for the period of April 15, 2019, to April 15, 2020. *Id.* ¶ 15. Third, Axis issued a primary-liability policy with a $2 million limit of liability to USIS for the period of April 15, 2019, to April 15, 2020 (the "Axis Policy"). *Id.* ¶¶ 1, 17. Fourth, Starr issued an excess-liability policy with a $3 million limit of liability to USIS for the period of April 15, 2019, to April 15, 2020 (the "Starr Policy"). *Id.* ¶¶ 2, 18; *see Liberty Mut. Ins. Co. v. N.Y. Marine & Gen. Ins. Co.*, 505 F. Supp. 3d 260, 276 (S.D.N.Y. 2020) ("When two insurance policies both cover the same liability, the priority of coverage determines which insurer must pay. The primary insurance must pay out first and excess insurance need only be paid out when the primary insurance has been exhausted up to the policy limit.").

On September 13, 2019, Thomas Daniello filed a lawsuit in the New York Supreme Court, New York County (the "Underlying Action"). ECF No. 30-4 at 26-36. His amended complaint, filed on February 13, 2020, named four defendants, including L&K. *Id.* at 38-49. Daniello alleged that on April 24, 2019, while working on a construction project on the tenth floor of a building in Manhattan, he fell off a ladder and sustained serious permanent injuries to his left knee, neck, and back. *Id.* at 41, 44-45. In its answer filed on September 4, 2020, L&K admitted that the tenth-floor tenant had hired L&K as the construction project's general contractor, and that L&K had subcontracted certain work to Systems. *Id.* at 69, 71-72, 79.

On June 8, 2020, Travelers tendered the defense and indemnification of L&K and USIS to Axis under the Axis Policy. Compl. ¶ 1. On June 22, 2020, Axis accepted Travelers's tender of defense of L&K and USIS up to the Axis Policy's $2 million limit of liability without reservation of rights. *Id.* ¶¶ 1, 25; ECF No. 30-1.[2] Axis retained the law firm

---

[2] The Courts notes, solely for completeness, that Travelers also tendered (and Axis accepted the tender of) the defense of the building owner and the tenth-floor tenant. ECF No. 30-1.

2

of Katz & Rychik ("Katz") to defend both L&K and USIS in the Underlying Action.  Compl. ¶¶ 4, 20.  In June 2020, Travelers also tendered the defense and indemnification of L&K and USIS to Starr under the Starr Policy.  *Id.* ¶ 2.  Starr has not accepted Travelers's tender or otherwise confirmed that it is next in line after Axis to provide excess coverage for claims involving L&K and USIS.  *Id.* ¶ 3.

On February 7, 2022 – facing uncertainty about whether Starr would agree to provide excess coverage for the claims at issue in the Underlying Action – L&K impleaded USIS in the Underlying Action.  *Id.* ¶ 21; ECF No. 30-4 at 83-103.  L&K alleged that Systems had subcontracted with Electric to provide the equipment, labor, and supervision required under the contract between L&K and Systems, and that Daniello was Electric's employee.  ECF No. 30-4 at 88.  L&K claimed that if it were found liable to Daniello, Systems and/or Electric would be liable to L&K under theories of contribution, common-law indemnification, contractual indemnification, and/or breach of contract.  *Id.* at 90-103.

L&K's third-party complaint quoted a clause in the contract between L&K and Systems.  *Id.* at 93-94.  Under that provision, Systems agreed to indemnify, defend, and hold harmless L&K as to claims "arising out of or in connection with or as a result or consequence of the performance of the [w]ork of [Systems] . . . , whether or not caused in whole or in part by [Systems] or any person or entity employed, either directly or indirectly by [Systems] including any subcontractors thereof and their employees."  *Id.*  Systems also agreed to "cause all subcontract agreements it enters into to include this indemnification clause so as to ensure that [L&K] shall have the same protection from sub-subcontractors as is afforded by [Systems]."  *Id.*  The provision further stated that "upon receipt by [L&K] of a claim upon which indemnification is sought, [L&K] shall, within ten (10) days of [L&K's] receipt, forward the claim and all documentation related thereto to [Systems] and shall, thereafter,

3

cooperate with all reasonable requests of [Systems] and/or its attorneys related to the defense of the claim.  Should [L&K] so choose, [L&K] may participate in the defense of the claim with counsel of their choice and at their own expense." *Id.* at 93-94.

USIS moved to dismiss L&K's third-party complaint, invoking the anti-subrogation rule.  ECF No. 34-6; *see Millennium Holdings LLC v. Glidden Co.*, 53 N.E.3d 723, 728 (N.Y. 2016) ("Under [the anti-subrogation] rule, an insurer has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered[,] even where the insured has expressly agreed to indemnify the party from whom the insurer's rights are derived." (ellipsis, quotation marks, and citation omitted)).  In its opposition to USIS's motion, L&K argued that "the anti-subrogation rule [wa]s not even implicated, and certainly d[id] not bar the claims."  ECF No. 34-7 at 7-8.

The state court denied USIS's motion to dismiss.  *Daniello v. J.T. Magen & Co.*, No. 158947/2019, 2022 WL 3586101, at *2 (N.Y. Sup. Ct. Aug. 18, 2022).  It explained: "L&K contends, and this Court agrees, that it has alleged viable causes of action against third-party defendants for contribution, common-law and contractual indemnification, and breach of contract for failing to procure necessary insurance.  L&K is entitled to prosecute the third-party action against third-party defendants to protect itself against potential exposure above the $2,000,000 limits of the Axis Policy." *Id.* at *1 (further capitalization omitted).

Travelers has repeatedly requested that Axis select separate and independent defense counsel for L&K and USIS in the Underlying Action.  Compl. ¶ 22.  Axis has not granted these requests.  *Id.* ¶ 23.

## II. The Case at Bar

Travelers filed this action on February 22, 2023.  Compl.  Travelers seeks a declaration that "Axis is obligated to defend the interests of Travelers insureds L&K and

4

[USIS] in the Underlying Action through the retention of separate and independent counsel for L&K and [USIS] throughout the pendency of the Underlying Action," a declaration that "Axis is obligated to reimburse all past defense costs which may have been incurred relative to this matter," and attorney fees for this action. *Id.* at 5.

Axis moved to dismiss the Complaint on June 30, 2023. Br. The motion is fully briefed. ECF Nos. 34 ("Opp."), 44 ("Reply").[3]

## LEGAL STANDARD

"A motion to dismiss for lack of Article III standing challenges the subject-matter jurisdiction of a federal court and, accordingly, is properly brought under [Rule] 12(b)(1)." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020). On a motion to dismiss for lack of standing, a court accepts the complaint's factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Sonterra Cap. Master Fund Ltd. v. UBS AG*, 954 F.3d 529, 533 (2d Cir. 2020). A court also must provisionally "accept as valid the merits of [the plaintiff's] legal claims." *FEC v. Cruz*, 596 U.S. 289, 298 (2022); *accord Doe No. 1 v. Putnam County*, 344 F. Supp. 3d 518, 531 n.8 (S.D.N.Y. 2018) ("The Supreme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." (brackets and citation omitted)). The central inquiry is whether the plaintiff has "plead[ed] an injury in fact attributable to the defendant's conduct and redressable by the court." *Tyler v. Hennepin County*, 598 U.S. 631, 636 (2023).

---

[3] Axis requested oral argument via a notation on its reply brief. The Court declines this request because the parties' briefing was sufficient and oral argument would not materially assist the Court. *See Dotson v. Griesa*, 398 F.3d 156, 159 (2d Cir. 2005) ("[A] district court acts well within its discretion in deciding dispositive motions on the parties' written submissions without oral argument.").

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court accepts a complaint's factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Oakley v. Dolan*, 980 F.3d 279, 283 (2d Cir. 2020). Still, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## DISCUSSION

Axis first challenges Travelers's standing to bring this case. *See* Br. at 13-17. Axis also contends that the Court should discretionarily decline to exercise jurisdiction under the Declaratory Judgment Act. *See id.* at 17-18. Axis finally argues that Travelers's claims fail on the merits and that the Court should reject Travelers's request for attorney fees. *See id.* at 9-13, 18. The Court confirms its jurisdiction before turning to the merits.

### I. Article III Standing

"To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020). Axis argues that Travelers "fails to allege facts which satisfy any, much less all, of [these] required elements of standing." Br. at 14. According to Axis, Travelers has not suffered an injury in fact "because Axis accepted Travelers'[s] tender and agreed to provide a full defense to the defendants in the Underlying Action, and [Travelers]

6

do[es] not establish that L&K faces an actual or imminent risk of uninsured liability exposure due to any conduct of Axis." *Id.* at 14-15 (further capitalization omitted). Axis also contends that Travelers has not shown "any injury caused by Axis (in contrast to the alleged theoretical injury that may in the future result from Starr's as-yet unstated coverage position)." *Id.* at 15 (further capitalization omitted). Axis further submits that the Complaint's allegations "do not establish that Starr's failure to, as yet, take a position in response to Travelers'[s] tender and request for confirmation of Starr's next-in-line coverage position will not be redressed by the appointment of separate defense counsel for L&K in the [U]nderlying Action." *Id.*

The Court is unconvinced. Axis's argument relies on the premise that Axis's "agree[ment] to provide a full defense to the defendants in the Underlying Action" sufficiently discharges Axis's obligations to Travelers's insureds. *Id.* at 14. It is Travelers's position, however, that the defense offered by Axis is deficient due to a potential conflict of interest. *See generally* Opp. Whether that assertion is true implicates the *merits* of Travelers's case, not Travelers's *standing* to bring its case. In addressing the latter issue, the Court must "accept as valid the merits of [Travelers's] legal claims." *Cruz*, 596 U.S. at 298.

In turn, Travelers's asserted injury in fact – "retain[ing] counsel on behalf of L&K and continu[ing] to incur defense costs to provide L&K independent counsel," Opp. at 12-13; *see* Compl. ¶ 7 (requesting "reimbursement of past defense costs incurred relative to this matter"); ECF No. 30-4 at 3-24 (L&K's third-party complaint against USIS signed by attorneys from the law firm of Nicolleti Hornig & Sweeney) – is a "monetary injury" that readily qualifies as "a concrete injury in fact under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Plainly, Axis "caused" its own refusal to pay for L&K's independent counsel. *Thole*, 140 S. Ct. at 1618. And a decision by the Court declaring that Axis must retain "separate and independent counsel for L&K and [USIS] throughout the pendency of the Underlying Action"

7

and that Axis must reimburse Travelers's expenditures on independent counsel for L&K to date, Compl. at 5, would sufficiently redress Travelers's asserted injury.

Axis separately contends that "Travelers does not have standing to bring this action under New York law." Br. at 15 (emphasis and further capitalization omitted). Axis's argument on this point is somewhat unclear. Based on the cases that Axis cites, the thrust of Axis's argument seems to be that Travelers cannot enforce the Axis Policy under New York law and, therefore, Travelers cannot seek a declaration of rights under the Axis Policy. *See id.* at 15-17 (citing, among other cases, *Andrews v. Sony/ATV Music Publ'g, LLC*, No. 15-cv-07544 (AJN), 2017 WL 770614, at *7-8 (S.D.N.Y. Feb. 24, 2017); *Travelers Prop. Cas. Corp. v. Winterthur Int'l*, No. 02-cv-02406 (SAS), 2002 WL 1391920, at *5 (S.D.N.Y. June 25, 2002); and *Obra Pia Ltd. v. Seagrape Invs. LLC*, No. 19-cv-07840 (RA), 2020 WL 5751195, at *17 (S.D.N.Y. Sept. 25, 2020)). But this argument does not implicate "standing" in the Article III sense. Rather, it pertains to "whether [Travelers] has a cause of action under the [Axis Policy]." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). Therefore, even if Axis is correct that Travelers cannot enforce the Axis Policy under New York contract-law principles (something that the Court does not decide), such a conclusion would not affect the Court's subject-matter jurisdiction. *See id.* at 128 n.4 ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional power to adjudicate the case." (further emphasis and citation omitted)). Hence, the Court rejects Axis's challenges to Travelers's Article III standing.

II. **Declaratory Judgment Act**

Axis urges the Court to decline to exercise jurisdiction under the DJA. In Axis's view, "a judgment will not serve a useful purpose since Travelers'[s] true issue here is not Axis'[s]

duty to defend; it is self-evidently about the relative indemnification priorities under the Starr Policy and the Travelers Policies excess of the Axis [Policy's] limits." Br. at 17-18 (further capitalization omitted). Axis also accuses Travelers of attempting to engage in "procedural fencing," and asserts that "any alleged 'conflict' requiring independent counsel is wholly unrelated to Axis." *Id.* at 18 (further capitalization omitted). The Court refuses Axis's request to decline jurisdiction.

       The DJA provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). "[E]ven in circumstances when a declaratory judgment would serve a useful purpose in clarifying and settling the legal relations in issue or terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding, district courts retain broad discretion to decline jurisdiction under the DJA." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99 (2d Cir. 2023) (original brackets, quotation marks, and citations omitted).

       But just because the Court *can* decline jurisdiction does not mean that it should or will do so here. The Court agrees with Travelers that a decision here should "clarify whether Axis'[s] duty to defend L&K requires it to retain independent counsel and whether Axis is required to reimburse Travelers for defense costs incurred on behalf of L&K in the Underlying Action," and that such clarification could "serve a useful purpose." Opp. at 14 (further capitalization omitted). Therefore, the Court exercises jurisdiction under the DJA.

9

**III.    Merits**

The Court now turns to the merits. "The parties' briefs assume that New York law controls this dispute, and such implied consent is sufficient to establish choice of law." *Int'l Bus. Machs. Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 423 (2d Cir. 2002) (ellipsis and citation omitted). On matters of state law, the Court must follow the decisions of the state's highest court. *See Johnson v. Fankell*, 520 U.S. 911, 916 (1997). If the state's highest court has not addressed an issue, this Court must predict how that court would do so. *See Int'l Bus. Machs.*, 303 F.3d at 423.

"As a general rule, a liability insurer has a right to control the defense of underlying litigation against its insured based on the right of the insurer to protect its financial interests." *Ottaviano v. Genex Cooperative, Inc.*, 790 N.Y.S.2d 791, 792 (4th Dep't 2005); *accord Forcelli v. Gelco Corp.*, 972 N.Y.S.2d 570, 573 (2d Dep't 2013); *Desriusseaux v. Val-Roc Truck Corp.*, 646 N.Y.S.2d 161, 162 (2d Dep't 1996). But a leading case, *Public Service Mutual Insurance Co. v. Goldfarb*, 425 N.E.2d 810, 815 (N.Y. 1981), explains that if "the insurer's interest in defending the lawsuit is in conflict with the [insured's] interest – the insurer being liable only upon some of the grounds for recovery asserted and not upon others – [the insured] is entitled to defense by an attorney of his own choosing, whose reasonable fee is to be paid by the insurer." Importantly, "a conflict of interest requiring retention of separate counsel" will not "arise in every case where multiple claims are made." *Id.* at 815 n*. "Independent counsel is only necessary in cases where the defense attorney's duty to the insured would require that he defeat liability on any ground and his duty to the insurer would require that he defeat liability only upon grounds which would render the insurer liable." *Id.*; *accord N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 124 (2d Cir. 2010); *Peleus Ins. Co. v. Atl. State Dev. Corp.*, 587 F. Supp. 3d 7, 23 (S.D.N.Y. 2022); *Sea*

*Tow Servs. Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 211 F. Supp. 3d 528, 548-49 (E.D.N.Y. 2016), *aff'd*, 699 F. App'x 70 (2d Cir. 2017) (summary order).

Axis argues that the limited circumstances recognized in *Goldfarb* are absent here "because Axis agreed to defend all of the insureds without a reservation of rights" and the Complaint "fails to allege any facts as to Axis warranting independent counsel." Br. at 9 (further capitalization omitted). The Court agrees.

The concern underlying *Goldfarb* was a conflict between counsel's "duty to the *insured*" and counsel's "duty to the *insurer*" – not a conflict between two different insureds. 425 N.E.2d at 815 n* (emphases added); *see 69th St. & 2nd Ave. Garage Assocs. v. Ticor Title Guarantee Co.*, 622 N.Y.S.2d 13, 14 (1st Dep't 1995) ("In practically all, if not in all cases, the insured and the insurer will have a common interest in defeating the claim made against the insured. What change[s] the rights of the insurer and the insured in those cases [requiring independent counsel] [a]re the conflicts arising from their divergent interests, in how they would prefer to go about defeating such claims." (emphasis omitted)); *Hall v. McNeil*, 510 N.Y.S.2d 341, 341 (4th Dep't 1986) ("[W]hen covered and non-covered causes of action are asserted against an insured, the correct procedure is for the insured to select his own counsel at [the] insurance carrier's expense to defend the entire action."); *Emons Indus., Inc. v. Liberty Mut. Ins. Co.*, 749 F. Supp. 1289, 1297 (S.D.N.Y. 1990) ("Where the insurer lacks an economic motive for vigorous defense of the insured, or the insurer and insured have conflicting interests, the insurer may not compel the insured to surrender control of the litigation." (citation omitted)). Travelers plausibly alleges only a conflict between two different insureds, so Axis is under no obligation to provide L&K and USIS with separate independent counsel.

*National City Bank v. New York Central Mutual Fire Insurance Co.*, 775 N.Y.S.2d 679 (4th Dep't 2004), cited by Axis, *see* Br. at 11, is on point. There, the plaintiff sought a declaration that the insurer was "obligated not only to defend [the plaintiff], as owner of a vehicle, in an underlying action arising out of a traffic accident but also to hire separate counsel for [the plaintiff], distinct from the counsel hired to defend the driver and lessee of the motor vehicle involved in the accident." *Nat'l City Bank*, 775 N.Y.S.2d at 680. The Fourth Department rejected this argument:

> We agree with [the insurer] that a unified defense was properly offered in accordance with the policy. The three defendants have a unified interest in the defense of the underlying action. The assertion of cross claims for indemnification in the underlying action was a choice [the plaintiff] made out of preference, not legal necessity. In any event, where, as here, an insurer fulfills its duty under the policy to provide a defense for an insured, hiring separate counsel to pursue an insured's affirmative cross claims is the insured's responsibility.

*Id.* (citation omitted). The same is true here: L&K and USIS "have a unified interest in the defense of the [U]nderlying [A]ction," and L&K's decision to seek indemnification from USIS was "made out of preference, not legal necessity." *Id.* Axis has "fulfill[ed] its duty under the policy to provide a defense for [L&K]," and thus "hiring separate counsel to pursue [L&K's] affirmative cross claims [against USIS] is [L&K's] responsibility." *Id.* Although *National City Bank* is a decision by the Fourth Department rather than the Court of Appeals, federal courts ordinarily "apply [state] law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010). "There is no such evidence here," so the Court follows *National City Bank*. *Id.*; *see also Keybank, USA, NA v. Gov't Emps. Ins. Co.*, No. 32172/2004, 2006 WL 5528985, at *1 (N.Y. Sup. Ct. May 24, 2006) ("Similarly [to *National City Bank*], in this case, there is no question that the defense of

12

the underlying personal injury action brought by Litvak was identical for all three defendants including Keybank; namely that Litvak and not Giannola was at fault for the traffic accident. . . . Keybank's decision to hire separate counsel was out of preference and not a legal necessity in this instance."), *aff'd*, 842 N.Y.S.2d 921 (2d Dep't 2007).

Travelers's sole effort to reconcile its claim with *National City Bank* is unpersuasive: "Here, the court in the Underlying Action specifically held that L&K had valid claims against [USIS] and because excess coverage is unknown, the claims are legally necessary." Opp. at 9. The Court disagrees. Although *National City Bank* did not specify or elaborate in detail on what constitutes a "legal necessity," L&K's claim against USIS does not qualify. 775 N.Y.S.2d at 680. Under New York law, an insured generally cannot recover attorney fees incurred in a common-law-indemnification claim brought by the insured against a codefendant or impleaded third-party defendant – belying the notion that such a claim is a "legal[] necessity" in the relevant sense. *Id.*; *see Chapel v. Mitchell*, 642 N.E.2d 1082, 1084 (N.Y. 1994) ("We find no authority for the proposition that the legal expenses of pursuing a common-law indemnification claim are recoverable when such claim is incidental to another action."); *Swan v. Pier 1 Imps. (U.S.), Inc.*, 104 N.Y.S.3d 651, 653-54 (2d Dep't 2019) ("A party who is entitled to recover against another defendant or a third-party defendant on a theory of common-law indemnification . . . cannot recover any legal expenses incurred in its prosecution of the common-law indemnification cause of action or claim." (quotation marks and citation omitted)); *Perez v. Spring Creek Assocs.*, 725 N.Y.S.2d 875, 876 (2d Dep't 2001) ("[T]he common-law indemnification claim against the third-party defendant . . . is incidental to the main action of the plaintiff and, therefore, there can be no recovery for any legal expenses incurred therein.").

Travelers relies extensively on *Liberty Mutual Fire Insurance Co. v. Hamilton Insurance Co.*, 356 F. Supp. 3d 326 (S.D.N.Y. 2018). That case, despite some superficial similarities, is distinguishable. Its facts and holding warrant recounting in some detail.

*Liberty Mutual*, like this case, arose out of a construction worker's underlying state-court personal-injury action. *See id.* at 328. The plaintiff's employer, Preferred, was hired to perform foundation work on a project for the Dormitory Authority of the State of New York ("DASNY"); Gilbane was hired as construction manager. *See id.* at 329. Hamilton issued an insurance policy to Preferred naming Gilbane and DASNY as additional insureds; Liberty issued an insurance policy to Gilbane naming DASNY as an additional insured. *See id.* When the plaintiff brought his personal-injury action against DASNY and Gilbane, DASNY cross-claimed against Gilbane, and both DASNY and Gilbane brought third-party claims against Preferred. *See id.* at 330.

After initially rebuffing Gilbane's tender, Hamilton finally "agreed to assume Gilbane's defense under a full reservation of rights, by which Hamilton meant that . . . (i) [Hamilton] reserved the right to appoint new defense counsel for Gilbane; (ii) the insured status applie[d] only to the extent the liability of the additional insured arises out of [Preferred's] work; and (iii) Hamilton reserved the right to disclaim coverage for any liability assessed against Gilbane that falls outside this coverage limitation." *Id.* at 330-31 (original brackets and quotation marks omitted). Hamilton subsequently "indicated an intent to replace Gilbane's counsel . . . with counsel of Hamilton's choosing," something that Liberty "resisted on the basis that Hamilton was subject to a potential conflict of interest" in light of "the combination of Hamilton's existing representation of Preferred and its recently-expressed position limiting Gilbane's coverage to harm caused by Preferred's negligence." *Id.* at 331.

14

Hamilton also "requested, unsuccessfully, that Gilbane dismiss the third party complaint [against] Preferred." *Id.* (quotation marks omitted).

After the underlying personal-injury action settled, Liberty sought Hamilton's reimbursement of money spent on Gilbane's defense. *See id.* at 328. Hamilton asserted that "any obligation to defend on its part was waived by Gilbane's conduct, including in particular Gilbane's refusal to accept a defense from Hamilton that included a right to replace . . . Gilbane's counsel." *Id.* at 336. Hamilton also argued that "there was no more conflict" when Hamilton finally undertook Gilbane's defense in October 2013 because, by that time, "there was no longer any dispute that Preferred [was] solely responsible for [the plaintiff's] injury; that Preferred had no plausible claim against Gilbane; and that Gilbane's sole liability flowed from the negligence of its sub-contractor, Preferred." *Id.* at 338-39 (emphasis and quotation marks omitted). Liberty countered that its refusal was justified because of Hamilton's conflict of interest. *See id.* at 338. Liberty argued that, because Hamilton would be liable "only to the extent th[at] liability ar[ose] out of [Preferred's] work," Hamilton had an incentive "to show that liability arose solely from Gilbane's work – increasing Gilbane's exposure and eliminating Hamilton's exposure both as insurer of Gilbane and as insurer of Preferred." *Id.* (ellipsis omitted). Liberty also noted that "Gilbane had cross-claims against and from DASNY, Hamilton's additional insured, and a third-party action for indemnification against Preferred, Hamilton's Named Insured." *Id.*

The court sided with Liberty and held that Liberty's refusal to accept Hamilton's defense "was justified." *Id.* at 336. The court explained:

> Even if the Court could plausibly determine that the conflict posed by the limitations on Hamilton's liability had evaporated by 2013 [when Hamilton undertook Gilbane's defense], Gilbane's cross-claim and third-party action persisted. "A further justification for representation by attorneys selected by

15

> the insureds exists in the instant case by reason of the claims and cross claims of the respondents. The cross claims indicate true adversity and conflict of interest." *Rimar v. Cont'l Cas. Co.*, 376 N.Y.S.2d 309, 313 (4th Dep't 1975). Here, the specter of conflict from the cross-claims and third-party action loomed larger due to Hamilton's repeated, and unsuccessful, attempts to persuade Gilbane to drop those claims. Under these circumstances, the apparent conflict of interest between Hamilton and Gilbane entitled Gilbane to counsel of its own choosing. Thus, Gilbane's refusal to accept Hamilton's offer of defense under the condition of a change of counsel did not absolve Hamilton of its duty to defend.

*Id.* at 339 (original brackets, ellipsis, and further citation omitted omitted).

Travelers latches onto *Liberty Mutual*'s discussion of the cross claims, insisting that "there is a conflict between L&K and [USIS] because of the third-party action between the parties," and that therefore Axis must appoint separate counsel. Opp. at 8; *see id.* ("There is a direct conflict between L&K and [USIS] that entitles L&K to independent counsel. Axis'[s] refusal to assign separate counsel to L&K has necessitated Travelers to continue to incur defense costs to protect the interests of L&K. Axis could have obviated this issue by agreeing to appoint different counsel for L&K, but it has failed to do so." (further capitalization omitted)); *id.* at 9 ("The conflict is between [USIS] and L&K because they are opposing parties in a third-party action.").

In so arguing, Travelers misunderstands *Liberty Mutual*. Independent counsel was needed there because of "the apparent conflict of interest *between Hamilton and Gilbane*" – that is, between the insurer and the insured, not between two of the insureds. 356 F. Supp. 3d at 339 (emphasis added). Here, Travelers fails to explain how the crossclaims between L&K and USIS create a conflict of interest *for Axis* that would entitle L&K to "counsel of its own choosing" funded by Axis. *Id.* Indeed, based on the facts alleged in the Complaint, Axis has no interest in whether L&K or USIS prevails in L&K's third-party action, or whether Starr

16

will step in and provide excess coverage if needed. Rather, Axis's sole interest is defeating Daniello's claim in the Underlying Action – a "unified interest" that Axis shares equally with L&K and USIS. *Nat'l City Bank*, 775 N.Y.S.2d at 680. If L&K wishes to "hir[e] separate counsel to pursue [its] affirmative cross claims" against USIS, that "is [L&K's] responsibility," not Axis's. *Id.*

*Penn Aluminum, Inc. v. Aetna Casualty & Surety Co.*, 402 N.Y.S.2d 877 (4th Dep't 1978), another case cited by Travelers, is distinguishable as well. In that case, "there [wa]s an appearance of collusive activity [by the insurance company Aetna and the additional insured Sears] against the named insured, Penn Aluminum[,] whom Aetna ha[d] an obligation to defend." *Id.* at 879. The Fourth Department noted that if Sears were held liable in the underlying action, "Sears would seek to be indemnified by Penn Aluminum. On the other hand, Aetna's own interests would be served by having the damages fall within an exclusion of the policy." *Id.* Because "Aetna ha[d] divided loyalties among its own interests, [Penn Aluminum,] and Sears," the latter two "ha[d] the right to obtain counsel of their own choice to be paid by Aetna." *Id.* Thus, like *Liberty Mutual*, *Penn Aluminum* included facts suggesting a conflict between the insurer and one or more of its insureds. No such allegations are contained in the Complaint here.

Travelers also cites two non-insurance cases where a defendant successfully moved to disqualify counsel from representing both that defendant and another defendant in the same action. *See Death v. Salem*, 490 N.Y.S.2d 526, 527-29 (2d Dep't 1985) (defamation); *Rice v. Baron*, 456 F. Supp. 1361, 1363-64, 1373-76 (S.D.N.Y. 1978) (securities fraud). Neither decision, however, considered whether (let alone held that) an insurer would be required to pay for counsel for cross-claiming defendants under facts like those alleged in the case at bar. Moreover, both cases included facts supporting the existence of a conflict of interest. *See*

*Death*, 490 N.Y.S.2d at 528-29 (counsel "displayed a tendency to reserve his most zealous advocacy for the defense of Salem's codefendants," suggesting that counsel was "seek[ing] to create distance between Salem and the [other defendants]"); *Rice*, 456 F. Supp. at 1375 (in case with five shareholder-defendants, "the stock ownership of [the two corporations was] sufficiently distinct so that it simply [wa]s not true that the same people would be affected financially in the same way regardless of whether [one corporation] or [the other corporation were] forced to bear the financial responsibility of any judgment"; also, three of the defendants "[c]learly . . . would benefit" if (as was possible) the other two defendants "were forced to shoulder the full burden of any judgment" individually, rather than the corporations bearing the burden).  Such allegations are absent from the Complaint at bar.

In short, the Complaint does not sufficiently allege that, in the Underlying Action, Katz's "duty to [L&K] would require that [Katz] defeat liability on any ground and [Katz's] duty to [Axis] would require that [Katz] defeat liability only upon grounds which would render [Axis] liable."  *Goldfarb*, 425 N.E.2d at 815 n*.  Therefore, Axis is under no obligation to pay for separate independent counsel for L&K and USIS.[4]

---

[4] Travelers's request for attorney fees is denied because it is not a prevailing party and, even if it were, there would be no basis here for departing from the American Rule that each party bears its own fees. *See Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) ("Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." (citation omitted)); *accord Mount Vernon City Sch. Dist. v. Nova Cas. Co.*, 968 N.E.2d 439, 447 (N.Y. 2012).

## CONCLUSION

As explained, although the Court DENIES Axis's motion to dismiss under Rule 12(b)(1), the Court GRANTS Axis's motion to dismiss under Rule 12(b)(6). The Clerk of Court is respectfully directed to terminate the motion at ECF No. 28 and CLOSE the case.

Dated: March 27, 2024
   New York, New York

SO ORDERED.

_Jennifer Rochon_
JENNIFER L. ROCHON
United States District Judge